

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

———————————————

## No. 08-25-00301-CR

———————————————

The State of Texas, Appellant

v.

Frankie Lee Hines, Appellee

On Appeal from the 143rd District Court
Ward County, Texas
Trial Court No. 25-08-6924-CRW

## MEMORANDUM OPINION

In October 2022, the State filed a five-count indictment against Appellee Frankie Lee Hines for sexual abuse of a child. It subsequently filed and dismissed four more indictments arising from the same locus of facts over the next three years. By October 2025, after Hines was indicted for the fifth time, the trial court dismissed the case on speedy trial grounds. On appeal, the State asserts in a single

point of error that the trial court erred in granting Hines's request for dismissal with prejudice. We conclude the trial court did not err because Hines established a violation of his right to a speedy trial. We affirm.

## I. BACKGROUND

The facts in this case are not in dispute,[1] but we detail them here to demonstrate the proceedings over the course of three years during which time Hines was prosecuted under five separate indictments for the same factual allegations. On October 26, 2022, Hines was indicted on one count of aggravated sexual assault of a child in Cause No. 22-010-6527-CRW for acts committed on or about February 1, 2020 (first indictment); *see* Tex. Penal Code 22.021(a)(2)(B). Unable to make bond, Hines was jailed after his arrest on January 28, 2023. A year later on October 23, 2023, the State sought and received a continuance of trial because it had "not had adequate time to prepare for trial."

On January 4, 2024, the State dismissed the first indictment and re-indicted Hines on one count of continuous sexual abuse of child under the age of 14 in Cause No. 24-01-6677-CRW for acts committed between February 1, 2020 and April 1, 2021 (second indictment). *See* Tex. Penal Code 21.02. Hines remained in jail. On January 19, 2024, the trial court set the case for trial on April 15, 2024.

On April 4, 2024, Hines filed a motion to set or dismiss for speedy trial violation to ensure the April 15 trial setting was not delayed. He asserted he had been in custody for more than 12 months, that the original indictment had been set for trial but dismissed, that the original indictment was for acts encompassed in the new indictment, and that any additional delay in bringing the case to trial would

---

[1] The State adopts the statement of facts contained in Hines's September 2025 motion to dismiss on speedy trial grounds in its brief. As appellant, the States bears responsibility to obtain complete transcripts for use in the appellate record and to be certain that all exhibits necessary for consideration of its grounds of error is included in it. *Moulton v. State*, 508 S.W.2d 833, 835 (Tex. Crim. App. 1974).

jeopardize the availability of witnesses. The record does not contain a written response from the State or any indication that the trial court held a hearing on the matter. On April 5, 2024, the trial court granted the motion to set, confirmed the April 15, 2024 setting, but denied the motion for dismissal based on speedy trial violation.

On April 15, 2024, with a jury panel assembled outside the courtroom, Hines announced ready for trial. The State then moved to dismiss the indictment arguing the complainant and other witnesses needed to be interviewed in Arkansas, and that it had:

> discovered information while doing final trial prep the preceding two days and determined that it cannot prove guilt beyond a reasonable [sic] that defendant committed repeated (two or more) acts of sexual abuse while the complainant was under age 14, as charged in the indictment in this case. This dismissal is without prejudice and the State will consider pursuing non continuous allegations for any acts of sexual abuse while the complainant was under age 17.

The trial court granted the State's motion to dismiss on April 15, 2024. Hines was then immediately extradited to, and incarcerated in, Bentonville, Arkansas, to await trial on allegations similar to those brought by the complaining witness in the Texas cases. Approximately eight months later, the Arkansas prosecution was dismissed.

However, while Hines was still in Arkansas, the State filed two new cases against him on October 23, 2024. In Cause No. 24-10-6803-CRW, Hines was charged with one count of sexual assault of a child (third indictment), the same as that alleged in the second indictment. *See* Tex. Penal Code 22.011. In Cause No. 24-10-6804-CRW, Hines was charged with one count of aggravated sexual assault of a child for acts committed on February 1, 2020 (fourth indictment)—the same charge alleged in the first indictment.[2] *See* Tex. Penal Code 21.02. Upon returning from Arkansas, Hines was served with the new indictments in the Ward County jail, arrested, and re-incarcerated.

---

[2] The record does not contain a copy of the fourth indictment, Cause No. 24-01-6804-CRW. The cause number is listed in Hines's supplemental brief to his second motion to dismiss for speedy trial violations, and in his proposed findings of fact

3

Hines filed a second motion to dismiss for speedy trial violations, although that motion, any response by the State, and any order from the Court are not included in the record before us. On March 18, 2025, the trial court held a hearing on the motion.[3] At that time, the State was represented by a newly elected District Attorney. Hines called the immediate past District Attorney Randy Reynolds to testify. Reynolds was responsible for Hines's case from its inception through the filing of the third and fourth indictments. Reynolds testified about not being ready for the April 2024 trial, and that he dismissed the second indictment on the day of trial as a result of interviews with witnesses who had come forward from the case in Arkansas. He testified: "I no longer had confidence we could prove true all the allegations in that indictment," and that his theme for the prosecution had "drastically changed." He also maintained there were "numerous reasons that supported the dismissal." Reynolds said he came to believe that "the best evidence, the critical evidence probably shows it beginning sometime in September, October, some eight months" after the February 2020 date pleaded in the indictments. The witness interviews conducted over the weekend also convinced him that "some of the people we needed to talk to were in Arkansas." Reynolds did not consider asking for a continuance, but instead believed dismissal was "the best avenue to go" because "I probably needed longer than just one month."

Reynolds said it was his practice to make a trial notebook before trial that should have contained his notes about the case, but he had no idea whether one had even been created, or whether, if created, where it was or if it was left for the incoming district attorney.

Reynolds did not provide any further information or discovery to Hines's attorneys as a result of his interviews with the Arkansas witnesses after the April 14 dismissal or at any time after Hines's

---

and conclusions of law submitted to the trial court after it dismissed with prejudice. The State's brief also confirms that a fourth indictment for aggravated sexual assault, presumably pursuant to Tex. Penal Code 22.021, was filed.

[3] The record contains only a transcript excerpt of the March 18, 2025 hearing on Hines's second motion to dismiss as an exhibit to his supplemental brief filed on April 11, 2025, after the hearing was held.

re-indictment in October 2024 even though additional witnesses had come to his attention. He did not remember receiving any information after the April 2024 dismissals that required disclosure to the defense, although he remembered there were "several" new witnesses and "there was a difference in what one witness was saying and what I'd understood the other witnesses to say." He said the new witnesses related to the complainant's outcry and were family members that "you all [the defense] should explore as well as the State." He was not sure whether or not this information had been documented, but if it had it should have been in his trial notebook.

Reynolds agreed that the "basic allegations" in all the indictments arose from the same CAC[4] interview. However, his investigation following the April 2024 dismissal led him to believe there were now "less" incidents than those alleged in the third and fourth indictments. He agreed the new witness statements had been given to him verbally and had not been put into writing. He also agreed there were no new formal witness statements, oral recorded statements, "or anything like [that]," that gave rise to the third and fourth indictments. He instead "made the decision" to go to the grand jury by reanalyzing "everything I knew at that point [from the April trial preparation] knowing that there needed to be some further interviews, investigations and such."

Reynolds testified he had hoped the Arkansas prosecution would have provided more information, but none was received when Hines was reindicted in October 2024. He was not aware that the Arkansas prosecution had been dismissed, nor had he had any contact with the complainant's family when he reindicted Hines in October 2024. Reynolds said that at the time of dismissal, he believed there was potential new evidence but admitted he did not receive any such evidence prior to the time

---

[4] "CAC" is an acronym for Child Advocacy Center. *See Gates v. Texas Dep't of Protective & Regul. Servs*, 537 F.3d 404, 413 (5th Cir. 2008). CACs were "established pursuant to Chapter 264, Subchapter E, of the Texas Family Code," for the purpose of "coordinat[ing] child abuse investigations among the various branches of government, including TDPRS, county law enforcement, and the district attorney, so that children will not experience the trauma of multiple investigations from the different governmental entities." *Id*.

of the October reindictments or at any time before he left the District Attorney's Office in December 2024. Reynolds also admitted he never made the trip to Arkansas to interview witnesses.

Following the March 18, 2025 hearing, Hines was released on a personal recognizance bond on March 21, 2025 after having been incarcerated for approximately 2 years and 2 months.[5] The trial was re-set for August 18, 2025.[6]

In advance of the August 18, 2025 trial setting, the State filed a notice of intention to use extraneous offenses, prior convictions, other crimes, and bad acts listing one prior Missouri conviction for misdemeanor stealing on July 25, 2025. On August 15, 2025, Hines filed a Motion in Limine, a Motion to Compel Election Before Trial Begins, and a motion to have the jury determine his punishment.

On August 18, 2025, with a jury assembled, the trial court granted all of Hines's pretrial motions, including the motion to elect. The State then immediately moved to dismiss the third and fourth indictments because:

> The State is exercising its prosecutorial discretion and dismissing the case in order to properly re-indict as a continuous sexual assault given the defense's late request for an election of offenses, which is impossible to give where the victim was continuously sexually assaulted over many months and in several jurisdictions.

On August 19, 2025, Hines was indicted for the fifth time in a five-count indictment in Cause No. 25-08-6924-CRW, alleging indecency and prohibited sexual contact with, and sexual abuse and continuous sexual abuse of a child. He continued to remain out of jail on a personal recognizance bond.

On September 16, 2025, Hines filed a third motion to dismiss based on a violation of his right to a speedy trial. There is no written response from the State in the record before us. On October 3,

---

[5] This is the total amount of time that Hines spent in Texas jail. The calculation would be different if the excludable time calculated and discussed in factor one "Length of Delay" were included.

[6] There is no order resetting the trial date in the record.

2025, the trial court held an arraignment on the fifth indictment and hearing on the third motion to dismiss. The trial court dismissed Cause No. 25-08-6924-CRW with prejudice in a short, written order. Although both the State and Hines requested permission to file proposed findings of fact and conclusions of law, only Hines filed them. None were entered by the trial court. The State filed a motion to stay all proceedings which the trial court granted on October 22, 2025.

The State timely filed its Notice of Appeal asserting a single issue—that the trial court erred by granting Hines's motion to dismiss the State's fifth indictment with prejudice.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

The Sixth Amendment to the United States Constitution, and the Texas Constitution, both guarantee an accused the right to a speedy trial. U.S. Const. amend VI; Tex. Const. art. 1, §10; *see Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016) (observing that Sixth Amendment is applicable to the States through the Fourteenth Amendment). Although the speedy trial right under the Texas constitution "exists independently of the federal guarantee," Texas courts have "traditionally analyzed claims of a denial of the state speedy trial right under the [four] factors established in *Barker v. Wingo.*" *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (en banc); *see Barker v. Wingo*, 407 U.S. 514, 530 (1972). Those factors are:

1) whether delay before trial was uncommonly long;
2) whether the government or the criminal defendant is more to blame for that delay;
3) whether, in due course, the defendant asserted his right to a speedy trial; and
4) whether he suffered prejudice as the delay's result.

*Zamorano*, 84 S.W.3d at 648 (internal citations omitted) (quoting *Barker*, 407 U.S. at 530).

The analysis of a speedy trial claim requires courts to weigh the strength of each *Barker* factor and then balance the factors' relative weights taking the State's and the defendant's conduct into account. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). The evidentiary burden differs

7

depending on the *Barker* factor at stake. The State carries the burden to justify the first factor, the length of the delay. *Cantu*, 253 S.W.3d at 280. The defendant carries the burden to show the delay is "presumptively prejudicial" and to prove he or she asserted his right and suffered prejudice. *State v. Lopez*, 631 S.W.3d 107, 113–114 (Tex. Crim App. 2021); *Cantu*, 253 S.W.3d at 280.

We apply a bifurcated standard of review to the *Barker* factor analysis. *Lopez*, 631 S.W.3d at 113–114. Factual components are reviewed under an abuse-of-discretion standard and legal components de novo. *Id*. Given these standards, we defer to explicit or implicit findings made by the trial court if supported by the record to sustain its ruling. *Id*. at 114. Although each *Barker* factor is initially individually assessed, all are ultimately balanced as a "purely legal question" subject to *de novo* review. *Id*. In the end, the trial court's ruling must be affirmed if it finds support in the record and is correct under any applicable theory of law. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

## III. DISCUSSION

### A. Length of delay

The first *Barker* factor—the length of delay—initially acts as a "triggering mechanism" to foreclose a speedy trial claim unless "a period of time that is, on its face, unreasonable in the circumstances" has passed. *Dragoo v. State*, 96 S.W.3d 308, 313–314 (Tex. Crim. App. 2003) (quoting *Doggett v. United States*, 505 U.S. 647, 651–652 (1992); *see Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."). The defendant carries the burden to demonstrate the presumptive prejudice of any delay—measured from the time defendant is arrested or charged to the time of trial or demand for a speedy trial. *Lopez*, 631 S.W.3d at 113–14. Texas courts generally find delays approaching one year to be unreasonable enough to trigger a full *Barker* inquiry. *Balderas*, 517 S.W.3d at 768.

Hines's trial was delayed by almost three years—2 years, 11 months, and 7 days—from the date the State charged him to the date that his case was finally dismissed with prejudice. In its brief, the State concedes, but does not directly address, that the delay was presumptively prejudicial by characterizing it as "lengthy on its face." Instead, the State maintains that any delay was caused by Hines's actions. *Id*. However, Texas courts generally consider the reasons for the delay under only the second, not the first, *Barker* factor. *See, e.g., State v. Uhl*, 717 S.W.3d 117, 129 (Tex. App.—Austin 2025, pet. ref'd); *Laird v. State*, 691 S.W.3d 30, 38 (Tex. App.—Austin 2023, pet. ref'd).

For the first time on appeal, the State attacks the length of delay, maintaining that the time between the dismissal of the second indictment and the filing of the two October 2024 indictments should not be counted for speedy trial purposes. *See Denstitt v. State*, No.02-14-00172-CR, 2015 WL 4043285, at *2–3 (Tex. App.—Forth Worth July 2, 2015, no pet.) (mem. op., not designated for publication) (failure to raise issue before trial court to preserve error rule applies to foreclose appellate review in speedy trial claims). Even if we assume this assertion is legally correct, the length of delay would be reduced by only 192 days for a total delay of 2 years, 4 months, and 27 days.

Nevertheless, we calculate the period of time excludable under the speedy trial as follows. The total period of delay in this prosecution was 1,073 days (2 years, 11 months, 3 days), from October 26, 2022 (when the first indictment was filed) to October 3, 2025 (when the case was dismissed for speedy trial violations). Hines served a total of 783 days (2 years, 1 month, 21 days from January 28, 2023 to March 21, 2025) in jail in this period.

We exclude 363 days from October 26, 2022 (the date of 1st indictment) to October 24, 2023 (the date when State's trial continuance on 1st indictment was granted because it was not ready for trial), and even if not excludable would be neutral and not the result of either the State's or Hines's actions. We also exclude the 193 days from April 15, 2024 (the date of dismissal of second indictment)

9

to October 23, 2024 (when the 3rd and 4th indictments were filed) which includes time Hines spent in Arkansas, and the 1 day between August 18, 2025 (when the 3rd and 4th indictments were dismissed) to August 19, 2025 (when the 5th indictment was obtained). This accounts for 556 days (1 year, 6 months, 11 days) of which should be excluded from the length of delay speedy trial analysis.

Given these calculations, there are still 517 days that must be included in the length of delay speedy trial analysis.[7] This period of time is significantly greater than the eight-month minimum needed to establish presumptively prejudicial delay. *Knox v. State*, 934 S.W.2d 678, 681 (Tex. Crim. App. 1996) ("courts generally hold that any delay of eight months or longer is presumptively unreasonable and triggers speedy trial analysis").

The trial court took judicial notice of all proceedings relevant to the case before granting Hines's third and final speedy trial motion. We agree with the trial court and conclude that the delay in this case was more than adequate to trigger a full *Barker* analysis, and that Hines has met his burden to prove he was presumptively prejudiced by that delay. ("The Court does find that the delays in this matter have triggered an analysis under *Barker v. Wingo*."). Finally, "[b]ecause the length of the delay stretched well beyond the bare minimum needed to trigger judicial examination of the claim," we also conclude "this factor—in and of itself—weighs heavily against the State." *State v. Wei*, 447 S.W.3d 549, 554 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (quoting *Zamorano*, 84 S.W.3d at 649); *Doggett*, 505 U.S. at 652 ("the presumption that pretrial delay has prejudiced the accused intensifies over time").

**B. Reasons for delay**

Having triggered a full *Barker* analysis, the State now has the burden to explain the reasons for and to justify the delay. *Cantu*, 253 S.W.3d at 280. The second *Barker* factor requires us to determine "whether the government or the criminal defendant is more to blame for the delay," and the evidentiary

---

[7] In that period, Hines served 319 days (10 months, 26 days) in jail from October 24, 2023 to April 15, 2024 and October 24, 2024 to March 21, 2025, when he was finally released on a personal recognizance bond.

weight assigned depends upon the reasons given for the delay. *Doggett v. Vermont v. Brillon*, 556 U.S. 81, 90 (2009); *Balderas*, 517 S.W.3d at 768. Intentional or deliberate attempts to "hamper the defense" weighs heavily against the State. *Id*. More neutral reasons, such as official negligence or overcrowded trial court dockets, are afforded less weight but may nevertheless weigh against the State because it retains the ultimate responsibility for proceeding to trial expeditiously. *Barker*, 407 U.S. at 531; *Balderas*, 517 S.W.3d at 768. Conversely, any delay caused by the defense weighs against the defendant. *Balderas*, 517 S.W.3d at 768.

Although an "unexplained" delay may weigh heavily against the State in some instances, if no evidence is presented that such a delay on behalf of the State was deliberate, this factor will weigh against the State, but not heavily. *Zamorano*, 84 S.W.3d at 649–651; *Gonzales v. State*, 435 S.W.3d 801, 810 (Tex. Crim. App. 2014). If the record is silent "or one contain[s] reasons [that are] insufficient to excuse the delay, it must be presumed that no valid reason for [the] delay existed." *Turner v. State*, 545 S.W.2d 133, 137–38 (Tex. Crim. App. 1976). Our review of the record compels the conclusion that the reasons offered by the State are insufficient to excuse the continuing delay in this case.

The State concedes "the previous district attorney representing the State was guilty of negligence and sloth." Between diligent prosecution and bad-faith delay is the middle ground of official negligence in bringing an accused to trial. *Doggett*, 505 U.S. at 656–57. Although "[s]uch negligence is weighed more lightly than a deliberate intent to harm the accused's defense," judicial tolerance of such negligence "varies inversely with its protractedness and its consequent threat to the fairness of the accused's trial." *State v. Davis*, 549 S.W.3d 688, 699 (Tex. App.—Austin 2017, no pet.) (quoting *Doggett*, 505 U.S. at 657 (internal citation omitted)).

This record demonstrates a continuing course of deliberate conduct by the State to delay the litigation until it felt comfortable in going to trial on charges it never seemed able to indict properly.[8] This compels the conclusion that the second factor weighs heavily against the State, and Reynold's testimony at the March 18, 2025 hearing on Hines's third speedy trial motion demonstrates the State's conduct was grossly, not simply, negligent.[9]

There were three trial settings in this case, at each Hines announced ready. At the first setting, the State sought, and received, a continuance by asserting it was not ready for trial.[10] At the second, the State dismissed the first indictment claiming it could not prove its case. Reynolds later testified that last-minute pretrial witness interviews led him to conclude the case required further investigation that would take him more than a month to complete when he dismissed the case in April 2024. It was the State's decision alone that only dismissal of the indictment would suffice, not a continuance for further investigation.

At the same April 4, 2024 hearing, Reynolds told the trial court he needed to go to Arkansas to conduct further witness interviews. By his own admission that never happened. Reynolds also testified his usual practice was to make a trial notebook containing his notes on witness interviews and other documentation in support of the prosecution. However, he admitted he had no idea whether he made such a notebook, or if made, whether it still existed or had been left for the incoming District Attorney. Hines has maintained, and Reynolds agreed in his testimony, that the State never produced further

---

[8] At the October 3, 2025 hearing on Hines's third and final motion to dismiss for speedy trial violation the trial court said: "I do find that the actions cumulatively have created a situation in which the motion to dismiss based on those violations is granted . . . with prejudice" Given the record, we find no abuse of discretion in this finding of fact.

[9] In his brief, Hines raised the specter of bad faith by the State. However, the trial court was not asked to make such a finding in Hines's proposed findings of fact and conclusions of law nor did it ever make such a finding. We refrain from drawing any conclusions on this point.

[10] There is no evidence in the record that Hines agreed to the continuance.

discovery or information to the defense, and the State does not challenge that assertion on appeal. Most revealing is Reynold's admission that the third and fourth indictments were simply based on the same information he "reanalyzed" after the second indictment was dismissed; this conduct supports the conclusion that the State intentionally delayed bringing Hines to trial. This admission, together with Reynold's testimony that he dismissed the second indictment because the case required further investigation, negates any inference that State's given reasons for the dismissal of the third and fourth indictments were genuine.

Hines also never received further discovery or information from the State in support of the fifth indictment. That indictment was obtained at "an emergency sitting of the grand jury the following day [after the August 2025 dismissal] to make sure that we did get [Hines] timely reindicted." It appears that this prosecution has been primarily, if not solely, supported by the same evidence which supported the first and second indictments. If the opposite conclusion is true, that the prosecution did develop further factual bases and information in support of the third, fourth, and fifth indictments, the State never produced any such additional discovery to the defense. The State's serial dismissals and re-indictments prejudiced the defense, at the least, by the loss of potential documentary evidence, information concerning exculpatory or favorable witnesses or testimony, or information for cross-examination that the material in Reynold's notebook might have supported.[11]

At the October 3, 2025 speedy trial hearing, the only explanation offered by the State for the August 2025 dismissals and fifth indictment was that "as soon as the State realized the procedural nuances that me as the newly elected [sic] did not fully appreciate in August, the only fair thing to do for justice was to dismiss and reindict." For the first time on appeal, however, the State argues its

[11] Reynolds testified that the pretrial witness interviews threw off his understanding of the cases' timelines and revealed contradictory testimony and potential new witnesses to such an extent that he "no longer had confidence [the State] could prove true all the allegations in that indictment."

actions did not violate Appellee's right to a speedy trial asserting that Hines "lay[] behind the log" by filing his motion to compel election three days before the August 18, 2025 trial setting, an election which resulted in "extreme delay." *See Denstitt*, 2015 WL 4043285 at *2–3 (failure to raise issue before trial court to preserve error rule applies to foreclose appellate review in speedy trial claims). However, motions to elect can be asserted even when a jury has been empaneled or in the middle of trial at the close of the State's evidence. *See Hubbard v. State*, 753 S.W.2d 496,499 (Tex. App.—Beaumont, 1998, pet. granted), *aff'd Hubbard v. State*, 798 S.W.2d 798 (Tex. Crim.App.1990) (motion to elect made after jury empaneled correct procedure that permits double jeopardy to attach); *Garcia v. State*, 614 S.W.3d 749, 756 (Tex. Crim. App. 2019) (in sexual assault of a child prosecution, defendant "had a constitutional, due-process right to an election at the close of the State's case in chief"). Fairly construed, Hines's pretrial motion to elect was an attempt to save time and judicial resources instead of waiting to make such a motion at trial.

The State, also for the first time on appeal, argues that Hines did not assert his speedy trial right in the 14-month period between the filing of the first indictment (October 2022) and the filing of the second indictment in January 2024, which it claims was a reason for the for "extreme delay" in the case. But in January 2024, the case was less than 14-months old. The State wants this delay to be held against Hines, even though the State had requested and received a continuance of a trial setting in October 2023 because it was not ready. Nonetheless, we excluded the 363 days from October 26, 2022 (date of first indictment) to October 24, 2023 (date when State's trial continuance on first indictment was granted because it was not ready for trial). Even if we had not, we would give that period neutral weight because it was not the result of either the State's or Hines's actions.

After the first indictment was dismissed and the second filed in January 2024, the trial court set the case for trial on April 15, 2024 because the State said it needed to interview witnesses in Arkansas.

14

When Hines filed his motion to *set or* dismiss for speedy trial violation ten days before that trial, he did so with the express purpose of ensuring the trial date. Hines announced ready and wanted to go to trial. *See Burgett v. State*, 865 S.W.2d 594, 597 (Tex. App.—Fort Worth 1993, pet. ref'd) (where trial continued pursuant to defense-requested continuances, "[d]elay caused by acts of the accused which are beyond the control of the prosecution should not weigh against the State"). The delay between the January 2024 and April 2024 trial setting is solely attributable to the State and its inability to marshal the quantum of evidence necessary for trial.

The trial court acknowledged that "even though [the new district attorney] was not associated with the actions of the State prior to . . . taking the office in 2025, those actions are still [imputed] upon the office as one continuous entity, the State that is. And I do find that the actions cumulatively have created a situation in which the motion to dismiss based on those violations is granted . . . with prejudice." In the context of this record, and the State's failure to propound a genuine reason for the delay, we conclude the second *Barker* factor weighs heavily against the State. *See Dragoo*, 96 S.W.3d at 314 (explaining that delays weigh against the State if not justified; to weigh heavily there must be evidence of "a deliberate attempt on the part of the State to prejudice the defense").

## C. Assertion of the right to speedy trial

Because the defendant retains the responsibility to assert his right to a speedy trial, he carries the burden to prove he timely asserted his right. *Barker*, 407 U.S. at 531; *Balderas*, 517 S.W.3d at 771. In this regard we keep in mind that "[t]he constitutional right is that of a speedy trial, not [to the] dismissal of the charges." *Cantu*, 253 S.W.3d at 281. Filing a motion to dismiss and requesting that the trial court dismiss the pending charges based on an alleged speedy-trial violation, as opposed to filing a motion for speedy trial that requests a prompt trial setting, attenuates the strength of a speedy-trial complaint because it creates an inference that the defendant prefers no trial at all, rather than a speedy

15

trial. *Id.* (if defendant asks for only dismissal, he must show he tried to get the case into court to go to trial in a timely manner); *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983) ("a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim"). The third *Barker* factor also acknowledges "the reality that defendants may have incentives to employ delay as a 'defense tactic': delay may 'work to the accused's advantage' because 'witnesses may become unavailable, or their memories may fade' over time." *Brillon*, 556 U.S. at 90 (quoting *Barker*, 407 U.S. at 521).

The record before us demonstrates that Hines diligently continued to assert his right to a speedy trial beginning with his first motion to set *or* dismiss for speedy trial violation filed on April 4, 2024, in advance of the April 15, 2024 trial on the second indictment. *See Cantu*, 253 S.W.3d at 283. ("Repeated requests for a speedy trial weigh heavily in favor of the defendant."). In that motion, he specifically asked the trial court to "maintain the current April 15, 2024 jury trial date OR dismiss the captioned cause." Fairly read, this was a request to protect his right to a speedy trial by proceeding to trial on April 15 and "[t]o preclude further delay." The record reflects the trial court interpreted the motion in this manner because it granted the motion to set the next day and affirmed the April 15 trial setting.

A second motion for speedy trial was filed and heard on March 18, 2025. That motion was denied. It was followed by the filing of the third and fourth indictments, which were also dismissed before trial.

After a fifth indictment, Hines filed his third motion for speedy trial which was heard on October 3, 2025. Hines asked the trial court to recall that he had been ready to go to trial on each of the three trial settings that were cancelled because of the State's conduct.[12] The State did not object nor offer

---

[12] Hines asked the trial court to take judicial notice of the events in each of the four prior dismissed cases which the court agreed to do.

any rebuttal, and the trial court did not reject that assertion. This is not a case where Defendant's inaction "weighs more heavily against a violation the longer the delay becomes." *Balderas*, 517 S.W.3d at 771 (internal quotation marks omitted). We find the third *Barker* factor weighs in Hines's favor.

### D. Prejudice to the defendant

The final *Barker* factor requires that we determine whether, and to what extent, the defendant suffered prejudice because of the delay. *Barker*, 407 U.S. at 532. The weight of any prejudice is assessed by considering the interests that the right to a speedy trial was designed to protect: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concerns of an accused; and (3) to limit the possibility that the defendant's defense would be impaired. *Id*. Of these interests, "the most serious is the last, because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Id*.; *Balderas*, 517 S.W.3d at 772. Affirmative proof of particularized prejudice is not essential to every speedy trial claim because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify . . . and its importance increases with the length of delay." *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017).

As to the first and second factors, Hines was under threat of prosecution for almost three years, and jailed for 2 years, 2 months and 7 days (800 days) from January 28, 2023 to March 21, 2025 because he could not make bond.[13] Of the five indictments filed by the State in that three-year period, all were based upon the same set of operative facts, and four were continued or dismissed on the State's motion.

The State does not contest that Hines was ready for trial. By definition, that readiness encompassed expense for legal work, witness fees, and travel for Hines who lives seven hours from Pecos. When he returned from incarceration in Arkansas after the prosecution against him was

---

[13] The amount of jail time spent in Arkansas is excluded from this calculation.

dismissed, the State rearrested him in jail on two new indictments and his incarceration continued. As a result of this extended prosecution, his physical and mental health and financial capacity also suffered. Each of these issues was raised and documented by Hines in his motions and briefing before the trial court, and in his brief to this Court.

This presentation shifted the burden to the State to rebut Hines's claims of prejudice. *See Huynh v. State*, No. 05-21-00991-CR, 2022 WL 17261155, at *7 (Tex. App.—Dallas, pet. ref'd) (mem. op., not designated for publication). However, the State did not introduce any evidence to rebut Hines's claims or to explain why Hines would not be prejudiced by its actions. We reject the State's assertion that Hines was not prejudiced by the delay because the gaps between indictments and the time spent in Arkansas rendered the remaining two years and two months of incarceration non-prejudicial.

Reynold's testimony further demonstrates that Hines's defense was significantly impaired and that the loss of evidence as a result of his Reynold's conduct was a reasonable possibility. *Barker*, 407 U.S. at 532. Again, the State never provided a reason for [Reynold's conduct] except to say that it was the result of "negligence and sloth."

By itself, Reynold's admission that the third and fourth indictments were based upon the same evidence as the second, and that no further investigation of the case was undertaken, demonstrates how the State's action in filing and dismissing indictments to avoid trial settings when Hines announced ready was prejudicial to the defense. And the State cannot support its assertion in its brief that. "[t]here is nothing in the record demonstrating that [Hines] has suffered any prejudice." It has failed to overcome the presumption of prejudice by demonstrating that the defense was unimpaired by the delay, such as by establishing that no evidence was lost or impaired during the time of delay. *Gonzales*, 435 S.W.3d. at 814–815.

18

We find the fourth *Barker* factor weighs against the State because Hines has made a showing of both actual and presumptive prejudice to the defense. *Hopper*, 520 S.W.3d at 923–24 ("excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter identify").

### E. Balancing the *Barker* factors

We now turn to the final piece of the *Barker* analysis—balancing the various factors in light of the parties' conduct. *Cantu*, 253 S.W.3d at 281; *Balderas*, 517 S.W.3d at 768. In so doing, we keep the following legal principles in mind: Hines bears the burden to prove his diligent assertion of his right to a speedy trial (factor 3) and to show prejudice (factor 4). *Id*. His burden on the latter two factors varies inversely with the length of delay (factor 1) and the State's culpability for the delay (factor 2). *Huynh*, 2022 WL 17261155, at *4 (citing *Cantu*, at 280–281). The greater the bad faith or official negligence on the part of the State, the less a defendant must show assertion of his speedy trial right or prejudice. *Id*. Here, the presumption of prejudice on the first factor has been met, and the remaining factors all lie against the State.

Weighing all the *Barker* factors, we find a violation of Hines's right to a speedy trial. The trial court did not err when it found a violation of Hines's right to a speedy trial and dismissed the case against him with prejudice. We overrule the State's sole issue.

## IV. CONCLUSION

We affirm the judgment of the trial court dismissing the fifth indictment against Hines with prejudice.

MARIA SALAS MENDOZA, Chief Justice

19

July 23, 2026

Before Salas Mendoza C.J., Palafox and Soto, JJ.
Soto, J., concurring

(Do Not Publish)